UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEAM THERAPEUTICS INC.,<br>*Plaintiff*,<br>v.<br>ANDREW WHYNOT,<br>*Defendant*. | Civil Action No. ____________________ |

# VERIFIED COMPLAINT

Plaintiff Beam Therapeutics Inc. ("Beam," the "Company," or "Plaintiff") brings this Verified Complaint against Defendant Andrew Whynot ("Whynot" or "Defendant"), stating as follows:

## Parties

1. Plaintiff Beam Therapeutics Inc. is a Delaware corporation with a principal office at 238 Main Street, Cambridge, Massachusetts 02142.

2. Defendant Andrew Whynot is an individual and, upon information and belief, a resident of the Commonwealth of Massachusetts with a personal address at 30 Cambria Street, Somerville, Massachusetts 02143.

## Jurisdiction and Venue

3. This Complaint states a claim for violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has original jurisdiction pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, with respect to this claim. This Court has supplemental jurisdiction over the remaining claims asserted herein pursuant to 28 U.S.C. § 1367.

4. This Court is the proper venue as this action arises from Defendant's conduct in Massachusetts.

## FACTS COMMON TO ALL COUNTS

5. Beam is a genetics medicine company in the business of delivering lifelong cures to patients suffering from serious diseases.

6. Whynot is a former Senior Director with Beam's Chemistry, Manufacturing, and Controls ("CMC") Operations. Whynot held the position of Senior Director, CMC Operations from his date of hire on July 1, 2022, until he voluntarily resigned, effective July 16, 2026.

7. From July 1, 2022, to July 21, 2025, Whynot worked as a Senior Director, CMC Operations under Technical Operations.

8. On July 21, 2025, Whynot transferred internally to CMC Operations, Technical Development/Pharmaceutical Sciences. He remained in this role for the duration of his employment with Beam.

9. CMC Operations oversees all CMC deliverables required to advance genetic medicine programs from early research through clinical trials and commercialization.

10. To protect its legitimate business interests in its trade secrets, confidential information, and customer relations, Beam has, among other things, entered into restrictive covenants with all employees, including non-solicit, confidentiality, and nondisclosure agreements.

### Whynot's Confidentiality Agreement

11. On April 12, 2022, Whynot entered into an Employee Non-Solicitation, Confidentiality and Assignment Agreement (the "Confidentiality Agreement" or "Agreement"), pursuant to which Whynot agreed that "all information, concerning the Company's or any of its affiliates' business, technology, business relationships or financial affairs which the Company

has not released to the general public (collectively, "Proprietary Information") is and will be the exclusive property of the Company and its affiliates." Confidentiality Agreement at § 1, attached as Exhibit 1 (underlined emphasis added).

12. "By way of illustration," the Agreement provides that "Proprietary Information" includes:

> . . . information or material which has not been made generally available to the public, such as (a) *corporate information*, including plans, strategies, methods, policies, resolutions, negotiations or litigation; (b) *marketing information*, including strategies, methods, customer identities or other information about customers, prospect identities or other information about customers, prospect identities or other information about prospects, or market analyses or projections; (c) *financial information*, including cost and performance data, debt arrangements, equity structure, investors and holdings, purchasing and sales data and price lists; (d) *operational and technological information*, including plans, specifications, manuals, forms, templates, pre-clinical and clinical data and strategies, designs, methods, procedures, formulas, discoveries, inventions, improvements, concepts and ideas; and (e) *personnel information*, including personnel lists, reporting or organizational structure, resumes, personnel data, compensation structure, performance evaluations and termination arrangements or documents. Proprietary Information also includes information received in confidence by the Company or any of its affiliates from its customers or suppliers or other third parties.

*Id.* at § 1.

13. Whynot further agreed that he would "keep and maintain adequate and current records of all Proprietary Information and Company-Related Developments" (defined below) developed by Whynot during his employment, "which records will be available to and remain the sole property of the Company at all times." *Id.* at § 6.

14. "Company-Related Developments" are defined in the Agreement to include all "inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, databases, computer programs, formulae, techniques, trade secrets,

graphics or images, and audio or visual works and other works of authorship (collectively, 'Developments'), whether or not patentable or copyrightable," that were "created, made, conceived or reduced to practice" by Whynot, "alone or jointly with others," or "under [Whynot's] direction during the period of [his] employment." *Id.* at § 5 (underlined emphasis added).

15. Whynot further agreed that:

> . . . all work performed by me is on a "work for hire" basis, and I hereby do assign and transfer and, to the extent any such assignment cannot be made at present, will assign and transfer, to the Company and its affiliates and its successors and assigns all my right, title and interest in all Developments that (a) relate to the business of the Company or any of its affiliates or any customer of or supplier to the Company or any of its affiliates or any of the products or services being researched, developed, manufactured or sold by the Company or any of its affiliates or which may be used with such products or services; or (b) result from tasks assigned to me by the Company or any of its affiliates; or (c) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company or any of its affiliates ("Company-Related Developments"), and all related patents, patent applications, trademarks and trademark applications, copyrights and copyright applications, and other intellectual property rights in all countries and territories worldwide and under any international conventions ("Intellectual Property Rights").

*Id.* (underlined emphasis added).

16. Pursuant to Section 2 of the Agreement, Whynot also agreed:

> I will not, at any time, without the Company's prior written permission, either during or after my employment, disclose any Proprietary Information to anyone outside of the Company, or use or permit to be used any Proprietary Information for any purpose other than the performance of my duties as an employee of the Company. I will cooperate with the Company and its affiliates and use my best efforts to prevent the unauthorized disclosure of all Proprietary Information. I will deliver to the Company all copies of Proprietary Information in my possession or control upon the earlier of a request by the Company or termination of my employment. . . .

*Id.* at § 2.

17. The Agreement further provides:

> All files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, or other written, photographic or other tangible material containing Proprietary Information, whether created by me or others, which come into my custody or possession, are the exclusive property of the Company to be used by me only in the performance of my duties for the Company. Any property situated on the Company's or any of its affiliates' premises and owned by the Company or any of its affiliates, including without limitation computers, disks and other storage media, filing cabinets or other work areas, is subject to inspection by the Company or any of its affiliates at any time with or without notice.

*Id.* at § 6.

18. The Agreement also contains the following acknowledgement by Whynot:

> I acknowledge receipt of the following notice under 18 U.S.C § 1833(b)(1): "An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal." Notwithstanding this immunity from liability, I understand that I may be held liable if I unlawfully access trade secrets by unauthorized means.

*Id.* at § 21.

19. The Agreement also contains several post-employment obligations, including an obligation that Whynot "notify the Company . . . of each subsequent employment or business activity, including the name and address of [his] employer or other post-Company employment plans and the nature of [his] activities" for twelve (12) months following the termination of his employment with the Company. *Id.* at § 16.

20. The Agreement further provides that Whynot must "provide a copy of this Agreement to any prospective employer, partner or coventurer prior to entering into an employment, partnership or other business relationship with such person or entity." *Id.* at § 17.

21. Finally, in the event of a breach of the Agreement, Whynot represented that:

> I understand that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of the Company and its affiliates and I consider them to be reasonable for such purpose. Any breach of this Agreement is likely to cause the Company and its affiliates substantial and irrevocable damage and therefore, in the event of such breach, the Company and its affiliates, in addition to such other remedies which may be available, will be entitled to specific performance and other injunctive relief, without the posting of a bond. If I violate this Agreement, in addition to all other remedies available to the Company and its affiliates at law, in equity, and under contract, I agree that I am obligated to pay all the Company's and its affiliates' costs of enforcement of this Agreement, including attorneys' fees and expenses.

*Id.* at § 11.

**<u>Relevant Employee Policies</u>**

22. Beam also protects its trade secrets and confidential information through several employee policies concerning use of information systems, data, and information.

23. Beam's "<u>Acceptable Use Policy</u>" provides that all data created, transmitted, or stored on its systems are "deemed to be the property" of the Company and subject to its monitoring. Acceptable Use Policy (POL-0004) at § 3.1.1, attached as <u>Exhibit 2</u>.

24. The Acceptable Use Policy also provides that employees may only use Company computers for authorized purposes, *id.* at § 3.2.1.1, and explicitly provides that the "[u]nauthorized copying or deletion of intellectual property" is prohibited, *id.* at § 3.3.2.1, and that employees may not "store, maintain, or back up [Company] data on personally owned computers, portable drives, or mobile devices." *Id.* at § 3.3.3.

25. All Beam employees are given copies of and trained on Beam's Acceptable Use Policy.

26. Whynot received training on Beam's current Acceptable Use Policy, and acknowledged that he had read and understood it, on August 21, 2025. *Compare* Vault Document Training Assignment re POL-0004, Acceptable Use Policy, signed by A. Whynot on Aug. 21, 2025, attached as Exhibit 3, *with* Exhibit 2, Acceptable Use Policy (POL-0004).

**Whynot's Resignation and Misappropriation of Proprietary Information**

27. On July 1, 2026, Whynot notified Beam that he would be resigning from his position of Senior Director, CMC Operations, effective July 16, 2026. Resignation Letter, attached as Exhibit 4.

28. Whynot did not provide Beam with the identity of a future employer, other post-Company employment plans, or the nature of his future activities. *Id.*

29. Upon information and belief, Whynot resigned from his employment with Beam to commence employment with Beam's direct competitor, Genetix Biotherapeutics Inc. ("Genetix").

30. On July 7, 2026, at approximately 11:30 a.m., Whynot met with his manager Chris Oesterling (VP, CMC Operations) ("Oesterling") and HR Business Partner Ashleigh Kaminsky ("Kaminsky"), who informed Whynot that his access to Beam's Proprietary Information had been partially cut off just before the meeting and that he should contact Beam's information technology ("IT") department about any personal documents on Beam's systems that he wished to retain. At that time, Whynot only retained access to his email, laptop, and Company OneDrive account.

31. Later that day, Kaminsky emailed Whynot a copy of his Confidentiality Agreement and reminded him of his continuing obligations to Beam.

32. Upon information and belief, Whynot believed that his access to Beam's Proprietary Information would be limited and/or cut off during his meeting with Oesterling and Kaminsky.

33. On July 8, 2026, at approximately 9:00 a.m., Beam's security information and event management system alerted the Company's IT department that Whynot had downloaded 143 files from Beam's systems on the morning of July 7, 2026, and transferred them to a USB thumb drive, Serial No. 057908B74090 (the "USB Device" or "USB Drive"), immediately before his meeting with Oesterling and Kaminsky.

34. Specifically, Whynot inserted the USB Device into his Beam laptop at 9:34 a.m., and began copying files at 9:35 a.m.

35. The files came from three separate locations on Whynot's Company laptop: (1) the desktop of Whynot's Company laptop; (2) a folder named "Andy" on the Company OneDrive account (which also contained personal files belonging to Whynot); and (3) a folder named "B302" on the Company's OneDrive account. Only the folder titled "Andy" contained Whynot's personal files.

36. Beam's promptly investigated Whynot's activity and determined that 14 of the files (the "Files") contain Beam's highly confidential and sensitive Proprietary Information.

37. The Files include Beam's recent regulatory interactions with the U.S. Food and Drug Administration ("FDA"), such as briefing documents and correspondences with the FDA that are not shared publicly, not broadly shared within Beam, and considered highly confidential.

38. The Files also included European Medicines Agency ("EMA") regulatory documents, a document describing Beam's "know how" for how to manufacture mRNA using its newly developed process, and an excel book containing the drug product release data for lipid

nanoparticle ("LNP") batches that describes the purity, potency, and identity of Beam's LNP drug product for Beam's liver program.

39. Whynot had access to and used the Files in the course of his work for Beam.

40. Whynot did not have any authority, need, or right to transfer the Files from Beam's system.

**Beam Demands Return of the Files – Whynot Reformats the USB Device**

41. On July 14, 2026, Susan O'Connor (Chief Human Resources Officer) ("O'Connor") and Kaminsky met with Whynot via Zoom and demanded the immediate return of the Files. Specifically, they instructed Whynot not to remove any information from the USB Device, and to bring the USB Device to Beam's office the next day to meet with Beam's Head of IT, Brad Dutot ("Dutot"), to review its content and delete the Files and any other Beam Proprietary Information.

42. Whynot agreed to the foregoing during the July 14 meeting.

43. Shortly after the meeting, Kaminsky emailed Whynot and asked what time he would be on site. Email thread between A. Kaminsky, S. O'Connor, and A. Whynot dated July 14, 2026, to July 16, 2026, attached as Exhibit 5. In response, Whynot asked if he could mail the USB Device together with his Company laptop and badge. *Id.* Kaminsky reiterated that he needed to come on site to complete the process and Whynot confirmed he would be on site at 1:00 p.m. the next day. *Id.*

44. On July 15, 2026, at 1:16 p.m., Whynot emailed Kaminsky, O'Connor, and Dutot, and stated "apologies for the late notice" but "I won't be able to drop off [the USB Device] today." He further stated:

> I will abide by all confidentiality agreements and upon exiting can state that I do not have any Beam proprietary information on any personal devices as outlined in those agreements.

*Id.*

45. Shortly thereafter, O'Connor responded as follows:

> We were surprised and disappointed to receive your email today. As discussed with you on Tuesday, July 14th, we have evidence that you downloaded files related to our most recent regulatory interactions with FDA including briefing documents and correspondences with the FDA.
>
> This is a very serious matter. This information is not broadly shared within Beam and is highly confidential. Other files that you downloaded include EMA regulatory documents. Even more concerning is a document that you downloaded describing our "know how" for how to manufacture mRNA using our newly developed process and a spreadsheet that appears to contain the drug product release data for LNP batches.
>
> You had agreed to meet with Brad Dudot today to give him the USB Drive at 1:00pm EST today, but shortly after 1:00pm EST, you canceled this meeting and have so far refused to return the USB Drive. This is unacceptable and breaches your confidentiality obligations to Beam.
>
> It is imperative that you demonstrate to us that you have returned the files that you downloaded onto the USB drive. You also need to attest that you have not uploaded the files from the USB drive onto any personal computers in your possession or shared the files with anyone else.
>
> Therefore, **<u>you need to deliver USB Device (Serial #:057908B74090) with all files intact (not having been deleted or modified since 7/7/2026) on that drive to Beam on Thursday, July 16th by no later than 2:00pm</u>**. **<u>You also need to return your company issued laptop at the same time.</u>** We will send back the USB Drive once we have removed all material from the device. We can also pick up the device from you on Thursday morning since you only live a short distance from the office; just let us know what you prefer.
>
> In addition, the attached Letter of Declaration outlines your obligations and is necessary to ensure that you retain no confidential information. **<u>Please sign and return the Letter of Declaration no</u>**

> **later than 2:00pm EST on Thursday, July 16th. This will be sent to you via Docusign.**
>
> If both of these actions are not timely completed, the company will have no choice but to further assess its options, including potential legal action against both you and your new employer, which we understand is Genetix Biotherapeutics, Inc.
>
> Your prompt attention to this matter is necessary and appreciated. Please contact me directly to let me know when you plan to deliver the USB Drive and Laptop to 238 Main Street location on Thursday and we will arrange to meet you in the main lobby on the 1st floor of the building.

*Id.* (original emphasis).

46. The Letter of Declaration attached to the foregoing email identified the Files and contained representations concerning Whynot's actions and obligations to Beam under the Agreement, and reasonable representations concerning actions required of Beam. *See* Letter of Declaration, attached as Exhibit 6.

47. Later that evening, Whynot responded as follows:

> Per the instructions that I was provided in our meeting yesterday with you and [Kaminsky], and in accordance with my obligations under the [Agreement], **the [USB Device] has been reformatted and any content deleted**. I do not have direct knowledge of the list of files that were allegedly transferred and therefore cannot sign the statement that I have personal knowledge that the facts of the attached letter are true and correct.
>
> No files containing any Beam proprietary or confidential information are retained in my possession on any personal devices.
>
> In communications with Karen Trundle, it was offered to provide a return shipping box and label to return my laptop. If it is preferred, I can be available on Thursday morning for my laptop and the reformatted USB device to be picked up from me. Please confirm what time is most convenient.
>
> I am amenable to the declaration letter with the exceptions of #2 and #7 as I do not have personal knowledge of the facts of #2 and as stated above, the device has been reformatted as per the discussion yesterday which would require a modification of #7.

Exhibit 5 (emphasis added).

48. Neither O'Connor, Kaminsky, nor Dutot ever instructed Whynot to reformat the USB Device or delete its content.

49. The next morning, O'Connor responded to Whynot as follows:

> You were not instructed at any time during the call on Tuesday, July 14th to remove any information from the USB Drive. You were instructed to bring the USB Drive to Beam, meet with Brad and that Brad would review the content, delete the information and return your USB Drive. You taking it upon yourself to reformat and delete content from the USB Drive is wholly inconsistent with our conversation on Tuesday.
>
> You are required to provide the company with the USB Drive as well as your laptop today (Thursday). You must also sign the attached declaration, which I have modified to reflect the fact that the files have been deleted from the USB Drive, as you represented in your email and that you did not copy files to any other device(s) or media. There will be no further modifications to the declaration.
>
> As stated previously, if both of these actions are not timely completed, the company will have no choice but to further assess its options, including potential legal action against both you and your new employer, which we understand is Genetix Biotherapeutics, Inc.
>
> We will reach out to you this morning to arrange for the pick-up of both the USB Drive and the laptop and will be sending the declaration letter to you via Docusign that must be signed and returned by 2:00pm EST.

*Id.*

50. Whynot responded shortly thereafter as follows:

> I cannot confirm by personal knowledge that the list of files in the declaration were transferred onto an external drive. As written, this document does not reflect my personal knowledge of what is true and correct.
>
> I am in agreement with other statements in the document.

*Id.*

51. The same morning, Beam sent a courier to Whynot's residence to collect the USB Device, which Whynot provided. Upon receipt, Beam confirmed that the USB Device had been reformatted and, therefore, Beam could not determine whether the Files had been transferred from the USB Device.

**Whynot's Agreement to Forensic Review**

52. On July 17, 2026, Beam's legal counsel sent a letter to Whynot, instructing him to immediately cease and desist from using or disclosing the Files or any other Beam Proprietary Information. Cease and Desist to A. Whynot dated July 17, 2026, attached as Exhibit 7. The letter also required that Whynot certify in writing the following by 12:00 p.m. on July 21, 2026:

- That Whynot will and has abided by all post-employment obligations in the Confidentiality Agreement;
- That Whynot has not uploaded or transferred the Files to any external drives, devices, or accounts;
- That Whynot had not shared and will not share the Files or any copies of the Files with any third party, including but not limited to Genetix or any employee or agent of Genetix;
- That Whynot had not shared and will not share any Proprietary Information with any third party, including but not limited to Genetix or any employee or agent of Genetix;
- That Whynot had returned all Proprietary Information and other Company property to the Company; and
- That Whynot will immediately provide any personal electronic device that a thumb drive can connect to (including, without limitation, his personal laptop) to Beam's forensic review vendor so that it could confirm that the Files were not uploaded to such devices and/or transferred to a third party or other storage device.

*Id.*

53. On the morning of July 21, 2026, Whynot emailed Beam's counsel and attached a signed certification (the "First Certification") that states the following:

> 1. I will and have abided by all post-employment obligations in the Confidentiality Agreement;
>
> 2. The files described in your communication do not reside on any devices, drives, or accounts in my possession;
>
> 3. I have not shared and will not share any Beam proprietary information, including the files described in your communication, with any third party, including but not limited to any past, current, or future employer or any agent thereof;
>
> 4. I have returned all proprietary information and other company property to Beam Therapeutics Inc with the exception of my ID badge. I will await instructions from Beam Therapeutics Inc on the preferred return method and otherwise will return the ID badge by mail.
>
> 5. My Beam Therapeutics Inc. issued laptop and my personal USB Device (Serial #057908B74090) were picked up at my residence by courier service on July 16, 2026.
>
> 6. I will provide personal electronic devices that a thumb drive can connected to a mutually agreed upon forensic review vendor. The scope of the forensic review of file transfer will be limited to the files described in your communication and USV Device (Serial #057908B74090) between July 7, 2026 and July 16, 2026. The scope of the forensic review is to be described in writing and mutually approved.
>
> I certify that the information contained in this letter is true and accurate to the best of my personal knowledge.

First Certification, attached as <u>Exhibit 8</u>; <u>see</u> <u>also</u> Email thread between A. Whynot and Hirsch Robets Weinstein dated July 21, 2026, to July 22, 2026, attached as <u>Exhibit 9</u>.

54. In response, Beam's counsel scheduled a call with Whynot for the afternoon of July 21, 2026. *Id.* During that call, Whynot confirmed that there were three laptops in his personal possession that the USB Device could have connected to and that his Gmail and Google Drive accounts were the only cloud based accounts he used. Beam's counsel stated to Whynot during the call that Beam required certain representations from him in writing no later than July 22, 2026, to avoid litigation, including that Whynot turn off the laptops and agree not to use them

until completion of a forensic review, the terms of which would be negotiated, and that he confirm he has turned off all automatic deletion protocols for, and prohibit third party access to, his Gmail and Google Drive accounts.

55. Whynot confirmed during the July 21, 2026 call that he would agree to a third party forensic review of his devices and cloud accounts.

56. Shortly after the July 21, 2026, call, undersigned counsel emailed Whynot to confirm the call, to describe the representations Beam required in writing, and to outline the proposed scope of a third party forensic review. Exhibit 9.

57. On July 22, 2025, Whynot responded and certified the representations in signed writing (the "Second Certification") as follows:

> 1. 3 family computers in my possession are described as following;
>
>    a. HP Laptop 14-ep0299nr, Prod ID BL9T2UA#ABA, SN# 1H95171057, 256GB
>
>    b. HP Laptop 14-ep0299nr, Prod ID BL9T2UA#ABA, SN# 1H95170ZR8, 256GB
>
>    c. HP Laptop 14-ep0299nr, Prod ID BL9T2UA#ABA, SN# 1H95170ZWL, 256GB
>
>    Each personal device has been turned off and will not and cannot be accessed by anyone without my permission until this matter is resolved or until Beam agrees in writing unless my personal counsel, once obtained, advises otherwise in which event this statement will be revised and communicated to Beam representation in advance of any actions counter to this statement;
>
> 2. I will not access and will not grant access to each personal device until this matter is resolved or until Beam agrees in writing unless my personal counsel, once obtained, advises otherwise in which event this statement will be revised and communicated to Beam representation in advance of any actions counter to this statement;
>
> 3. Device SN# 1H95171057 was last accessed on July 22, 2026. To the best of my knowledge, Devices SN# 1H95170ZR8 and SN# 1H95170ZWL were last accessed on July 19, 2026;

> 4. To the best of my knowledge I have turned off the possible automatic deletion protocols for Gmail and Google Drive, and will not delete any information stored thereon until this matter is resolved or until Beam agrees in writing unless my personal counsel, once obtained, advises otherwise in which event this statement will be revised and communicated to Beam representation in advance of any actions counter to this statement;
>
> 5. No one other than myself has access or will be given access to any cloud based account or service until this matter is resolved or until Beam agrees in writing unless my personal counsel, once obtained, advises otherwise in which event this statement will be revised and communicated to Beam representation in advance of any actions counter to this statement;
>
> 6. In the event that personal counsel or representation is obtained, access to information related to this matter, including information contained on the above referenced devices and cloud based accounts, may be exchanged and the communications protected under attorney-client privilege;
>
> I certify that the information contained in this letter is true and accurate to the best of my personal knowledge.

Second Certification, attached as Exhibit 10.

58. Based on the First and Second Certification, Beam initially determined that it would refrain from taking legal action against Whynot while a forensic review protocol was negotiated.

59. Thereafter, Whynot engaged Maya Shapiro, Esq. ("Attorney Shapiro") to serve as his counsel.

**Whynot's Subsequent Misappropriation Disclosures**

60. On July 24, 2026, undersigned counsel emailed Attorney Shapiro a copy of a proposed protocol for the forensic review of Whynot's devices and accounts.

61. Thereafter, undersigned counsel had a call with Attorney Shapiro on July 24, 2026, during which Attorney Shapiro disclosed that Whynot had an additional personal computer in his possession that the USB Device had been connected to before Whynot had reformatted the

USB Device. Undersigned counsel represented during the call that the forensic review protocol would need to be revised in light of the new disclosure, discussed those revisions, and invited Whynot's comments to the protocol.

62. Undersigned counsel followed up with Attorney Shapiro in writing after the July 24, 2026 call to confirm that Beam required the same certifications from Whynot in writing for the new computer that he had provided for the first three computers to refrain from taking legal action in light of the new disclosure. Email thread between T. Brown and M. Shapiro dated July 24, 2026, to July 27, 2026, attached as Exhibit 11.

63. On July 27, 2026, Attorney Shapiro emailed undersigned counsel and provided the additional certifications (the "Third Certification"). Third Certification, attached as Exhibit 12. In addition, Attorney Shapiro requested a call with undersigned counsel.

64. On July 28, 2026, undersigned counsel and Attorney Shapiro held a second call during which Attorney Shapiro disclosed the identity of additional USB devices that would appear in a forensic review.

65. In addition, Attorney Shapiro disclosed during the July 28, 2026 call that approximately a year to a year and a half earlier, Whynot had connected his personal OneDrive account to his Beam laptop and that Company files had been present on his personal OneDrive account, that Whynot had deleted those files after receiving the July 17, 2026 cease and desist letter from Beam, and that Whynot could not identify those files.

66. Whynot had not previously disclosed that he had a OneDrive account or that Beam's Proprietary Information had been transferred to his OneDrive account.

67. During the July 28, 2026 call, undersigned counsel represented that the continued disclosure of relevant information was very concerning, that Beam would require the same

representations in writing from Whynot concerning the OneDrive account as he had provided regarding the Gmail and Google Drive accounts, and that the disclosure of deleted files that could not be identified would require further review of Whynot's devices and accounts.

68. The next day, Attorney Shapiro provided undersigned counsel with a signed certification by Whynot concerning the additional USB devices (the "USB Certification"), among other things. USB Certification, attached as Exhibit 13. The USB Certification did not, however, include any representations regarding his personal OneDrive account or the deleted files. *Id.*

69. Thereafter, Attorney Shapiro confirmed in writing that Whynot's representations in the First Certification regarding cloud based accounts extended to the OneDrive account and the deleted files. Email thread between T. Brown and M. Shapiro dated July 29, 2026, to July 31, 2026, attached as Exhibit 14.

70. On August 3, 2026, undersigned counsel emailed Attorney Shapiro a revised forensic review protocol.

71. On August 4, 2026, undersigned counsel had a call with Attorney Shapiro during which Attorney Shapiro requested that additional information be provided to Whynot concerning the scope of the review of his cloud based accounts. Undersigned counsel provided this information to Attorney Shapiro later that day. Email thread between T. Brown and M. Shapiro dated Aug. 4, 2026, to Aug. 14, 2026, attached as Exhibit 15.

72. Undersigned counsel did not receive a response from Attorney Shapiro, despite following up on August 7, 2026, until August 10, 2026. *Id.* On August 10, 2026, Attorney Shapiro emailed undersigned counsel and asked if the forensic review could be completed in a single day. *Id.*

73. Undersigned counsel had previously represented to Whynot during the July 21, 2026 call, and to Attorney Shapiro, that a review could not be completed on that timeline. *Id.* Nevertheless, undersigned counsel provided information from Beam's forensic review vendor concerning the fastest timeline for the review on August 10, 2026. *Id.*

**<u>Whynot Reneges Certifications and Agreement to Forensic Review</u>**

74. On August 11, 2026, at 6:57 p.m., Attorney Shapiro emailed undersigned counsel, stating as follows:

> I know you were in depositions today but I wanted to let you know that I had the opportunity to touch base with my client who has informed me that he is becoming more and more uncomfortable with the process in the way it is written (which is why he asked to do this all in person and in one day). He has asked me to share the following requests with you in what he is willing to do at this point in time:
>
> *My client will agree to allowing KLD to image his devices (1-2 days to complete) and then return all devices to his possession at which point he will resume access and usage of those devices.*
>
> *All devices, content, images, and data from the devices must remain his personal property at all times with the option to have any images or copies made from the devices destroyed immediately upon his request. A certificate of destruction must be provided at his request.*
>
> *The file listing from the devices must be provided to him for review against the content on the actual devices prior to his decision to allow any third party (including Beam or representative) to review the file listing or any content contained in those files. A file path must be provided so that he can find and review any content that is found based on the search terms used.*
>
> *In the event that remediation is required, the devices may be collected for this process, upon his agreement of the files to be remediated.*
>
> *He has stated that this is the only way he will agree with this process. He feels that anything else represents an invasion of his privacy. Ownership of and access to the content on the devices is, and must remain, his personal and private property that he is voluntarily sharing in order to cooperate toward a resolution.*

> Please let me know if this is something that your client/KLD would be willing to do to get this resolved.

*Id.* (italic emphasis original).

75. On August 12, 2026, undersigned counsel called Attorney Shapiro and informed her that Beam was rejecting Whynot's proposal. Shortly thereafter, undersigned counsel emailed Attorney Shapiro the following:

> As discussed, Mr. Whynot's proposal is rejected. The undisputed facts are that Mr. Whynot downloaded highly confidential trade secrets without authorization, after providing notice that he was resigning from Beam and going to work for a direct competitor, and then deleted those documents after the misappropriation was discovered and he was directed by Beam not to do so. Further, Mr. Whynot has since disclosed that he connected his OneDrive account to his Beam work computer at an unknown date approximately 1-1.5 years ago and that he had Beam documents on his OneDrive account, which he deleted after this dispute arose and now cannot identify.
>
> Mr. Whynot's conduct is unacceptable, and this situation is solely a result of his actions. Beam has refrained from filing a lawsuit to date only because Mr. Whynot was representing that he would cooperate with the forensic review. Now for the first time, over two weeks after a protocol was first provided, he has changed course.
>
> Multiple terms Mr. Whynot is attempting to impose are nonstarters. Under no circumstances will Beam agree that all data from Mr. Whynot's devices and accounts is his personal property, or that he has the right to order the destruction of any images or data immediately upon his request. As you know, Mr. Whynot does not have any privacy interest in Beam's data or documentation and if any such data is on his devices or accounts, that data remains the property of Beam. Given the facts, Beam will not agree to Mr. Whynot's use of his devices and accounts until it is confirmed that he does not have Beam's information within his possession.
>
> Given the undisputed facts, Beam is confident it will obtain the relief it is seeking by voluntary agreement with Mr. Whynot from a Court. Should Mr. Whynot reject the proposed protocol, Beam will file a lawsuit to obtain that relief and will seek attorneys' fees and costs for all expenses incurred to date.

> Beam requires Mr. Whynot's agreement to the protocol no later than noon this coming Friday, August 14, 2026.

*Id.*

76. On August 14, 2026, Attorney Shapiro emailed undersigned counsel a document titled "Whynot Final Disclosure," dated that day, which states:

> Please allow this letter to represent my personal disclosures as of today:
>
> 1. I have not and will continue to not export, disseminate, transfer, or otherwise share any confidential or proprietary information, files, or data belonging to Beam from any device, cloud-based accounts or services, or by any other means to any and all third parties.
>
> 2. I will continue to abide by the post-employment terms written in the *Employee Non-Solicitation, Confidentiality and Assignment Agreement* signed on April 12, 2022.
>
> 3. If at any point in the future any confidential or proprietary information, files, or data belonging to Beam is discovered on any device or cloud-based accounts or services in my possesion [*sic*] it will be in no way disseminated to any party and destroyed promptly.
>
> 4. **I, and my family, will resume access and use of our devices for personal and family use**.
>
> 5. Please allow this to serve as notice that I require return of my personal property, USB device Serial # 057908B74090.
>
> 6. Should Beam request in writing, I will engage with a third-party to reformat any unallocated disk space on the devices described in prior communications and provide Beam with documentation for activities and affirmation that anything deleted from the devices remains destroyed and inaccessible at any point in the future.

Whynot Final Disclosure, attached as Exhibit 16 (emphasis added).

**COUNT I**
**VIOLATION OF DEFEND TRADE SECRETS ACT**
**(18 U.S.C. § 1836)**

77. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

78. Beam owned certain confidential, proprietary, and trade secret information that relates to products used in, or intended for use in, interstate and foreign commerce.

79. Beam has taken reasonable measures to keep such information secret and confidential.

80. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

81. In violation of Beam's rights, Whynot misappropriated Beam's confidential, proprietary, and trade secret information through improper and unlawful means, including by downloading Beam information on to the USB Device before his resignation became effective and by connecting his personal OneDrive account to his Company computer.

82. Whynot has failed to return the information that he downloaded to the USB Device and transferred to his personal OneDrive account and instead attempted to conceal his theft of such information by refusing to allow Beam to conduct a forensic analysis of his devices.

83. Beam has suffered and/or will suffer substantial harm as a result of Whynot's actions.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION
## (Massachusetts Common Law and M.G.L. c. 93 §§ 42, 42A)

84. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

85. By his actions, including those described above, upon information and belief, Whynot has misappropriated certain of Beam's confidential and proprietary information, and trade secrets, and has used and/or disclosed or inevitably will use and/or disclose such information.

86. Beam has taken reasonable steps to maintain the confidential nature of the trade secrets in Whynot's possession.

87. The information obtained by Whynot has substantial value to Beam, in part because it is confidential and proprietary, and derives significant independent economic value from not being generally known to the public or to others who can obtain economic value from its disclosure or use.

88. Accordingly, the above-described information constitutes "trade secrets" under applicable law.

89. Whynot was and is under a duty to keep Beam's confidential, proprietary, and trade secret information secret, and not to use or disclose such information other than for the benefit of Beam. In abusing his access to Beam's information, Whynot knew that he had acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy and limit its use.

90. Any copying, disclosure, and/or use of such information by Whynot constitutes unauthorized copying, disclosure, or use of trade secrets and confidential information in violation of the common law and M.G.L. c. 93, § 42, 42A.

91. Beam has suffered and/or will suffer substantial harm as a result of Whynot's actions.

**COUNT III**
**BREACH OF CONTRACT**

92. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

93. The Confidentiality Agreement is a valid and enforceable contract between Plaintiff and Defendant.

94. Defendant has breached the terms of the Confidentiality Agreement by, among other things:

a. Connecting his personal OneDrive account to his Company computer, thereby enabling the transfer of Plaintiff's Proprietary Information to his personal cloud account;

b. Downloading the Files without authorization or need to do so and transferring them to the USB Device; and

c. Failing to return all Proprietary Information, including but not limited to the Files, to Plaintiff upon the termination of his employment, including by not providing the USB Device to Plaintiff or by permitting the forensic review of his devices and accounts.

95. Defendant's breach of the Confidentiality Agreement has resulted in an immediate threat of irreparable harm to Plaintiff.

96. Defendant's breach of the Confidentiality Agreement has resulted and/or will result in serious, immeasurable, and irreparable harm to Plaintiff.

97. As a result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be proved at trial.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING**

98. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

99. The Confidentiality Agreement is a valid and enforceable contract between Defendant and Plaintiff.

100. Plaintiff complied with its obligations under the Confidentiality Agreement, including by employing Plaintiff and by providing Plaintiff with access to its trade secrets, confidential information, and customer relations.

101. Plaintiff breached the Confidentiality Agreement's implied covenants of good faith and fair dealing by, among other things, knowingly and intentionally taking and retaining Proprietary Information in violation of the Confidentiality Agreement.

102. As a result of Plaintiff's breach of the implied covenant of good faith and fair dealing, Defendant has been damaged in an amount to be proved at trial.

**COUNT VI**
**BREACH OF FIDUCIARY DUTIES**

103. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

104. In his role as Senior Director, CMC Operations, Defendant owed Plaintiff the fiduciary duties of loyalty and care.

105. Plaintiff breached his duties of loyalty and care by, among other things:

a. Connecting his personal OneDrive account to his Company computer, thereby enabling the transfer of Beam's Proprietary Information to his personal cloud account;

b. Downloading the Files without authorization or need to do so and transferring them to the USB Device; and

c. Failing to return all Proprietary Information, including but not limited to the Files, to Beam upon the termination of his employment, including by not providing the USB Device to Beam or by permitting a forensic review of his devices and accounts.

106. As a result of Plaintiff's breach of fiduciary duties, Defendant has been damaged in an amount to be proved at trial.

**COUNT VII**
**CONVERSION**

107. Plaintiff incorporates every other paragraph of this Complaint as if set forth fully herein.

108. Plaintiff owns or has a legal right to possess its Proprietary Information.

109. Defendant took deliberate acts to exercise control, ownership, or dominion over Plaintiff's Proprietary Information, including but not limited to:

a. Connecting his personal OneDrive account to his Company computer, thereby enabling the transfer of Beam's Proprietary Information to his personal cloud account;

b. Downloading the Files without authorization or need to do so and transferring them to the USB Device; and

c. Failing to return all Proprietary Information, including but not limited to the Files, to Beam upon the termination of his employment, including by not providing the USB Device to Beam or by permitting a forensic review of his devices and accounts.

110. Defendant had no legal right or permission to take, keep, or use the Proprietary Information as set forth herein.

111. As a result of Plaintiff's conversion, Defendant has been damaged in an amount to be proved at trial.

## Jury Trial Demanded

Plaintiff Beam Therapeutics Inc. demands a trial by a jury of not less than twelve (12) jurors of its peers on all counts so triable.

## Prayer for Relief

WHEREFORE, Plaintiff Beam Therapeutics Inc. respectfully requests that this Honorable Court:

A) Enter judgment in Plaintiff's favor on all counts;

B) Award Plaintiff its damages in an amount to be proved at trial;

C) Grant Plaintiff's contemporaneously filed *Ex Parte* Motion for a Temporary Restraining Order and for Preliminary Injunction;

D) Order Defendant to undergo an immediate forensic review of his devices and cloud based accounts, as set forth in the [Proposed] Order attached to the contemporaneously filed *Ex Parte* Motion for a Temporary Restraining Order and for Preliminary Injunction;

E) Permanently enjoin Plaintiff from violating the terms and conditions of the Confidentiality Agreement;

F) Award Plaintiff all of its attorneys' fees and costs; and

G) Grant Plaintiff such other and further relief as is just and equitable.

Respectfully submitted,

BEAM THERAPEUTICS INC.,

By its attorneys,

Dated: August 21, 2026

*/s/ Tavish Brown*

Samantha C. Halem (BBO No. 649624)
Tavish M. Brown (BBO No. 714038)
Julia E. Russo (BBO No. 707682)
Hirsch Roberts Weinstein LLP
One Liberty Square, 12th Floor
Boston, MA 02109
(617) 348-4300
shalem@hrwlawyers.com
tbrown@hrwlawyers.com
jrusso@hrwlawyers.com

* * * * * * * *

**VERIFICATION**
**(Pursuant to 18 U.S.C. § 1746)**

I, Susan O'Connor, am the Chief Human Resources Officer of Plaintiff Beam Therapeutics Inc. in the above-captioned matter. I verify that I have read the foregoing Verified Complaint and, with respect to the facts in the foregoing Verified Complaint of which I have personal knowledge, that said facts are true and correct. With respect to the facts of which I do not have personal knowledge, I verify on information and belief that said facts are true and correct to the best of my knowledge based on information and documents available to me.

I verify under the penalty of perjury that the foregoing is true and correct.

Dated: August 21, 2026

Susan O'Connor
Susan O'Connor (Aug 21, 2026 08:59:09 EDT)

Name: Susan O'Connor

Title: Chief Human Resources Officer

* * * * * * * *